# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

CHRISTOPHER SCRUGGS,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No.  C21-1009-LTS-MAR
(Crim. No. CR17-1048-LTS)

**MEMORANDUM
OPINION AND ORDER**

## I.    INTRODUCTION

This case is before me on four remaining claims set forth in Christopher Scruggs' motion (Doc. 1) and amended motion (Doc. 2-1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  Scruggs has filed a declaration (Doc. 2-1 at 72-79), a copy of his plea agreement (Doc. 2-1 at 80-86) and a copy of his criminal docket from the Western District of Wisconsin regarding his pretrial release and subsequent revocation (Doc. 2-1 at 87-102).  I previously filed an initial review order (Doc. 8) denying part of Claim 2 and directing responses regarding the ineffective assistance of counsel claims.  Doc. 8.  Scruggs' trial counsel filed a court-directed response (Doc. 13) and the Government filed a resistance (Doc. 15), to which Scruggs replied (Doc. 23) through counsel.  Included in his reply is an unofficial transcript of an interview he gave to law enforcement in 2014 (Doc. 23-1).

## II.    BACKGROUND

On October 18, 2017, Scruggs was indicted on five counts related to receipt, possession and accessing of child pornography.  Crim. Doc. 2.  Pursuant to a plea agreement, he pleaded guilty on April 2, 2018, to receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count 1) and possession of child

pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Count 2). Crim. Doc. 27. The presentence investigation report (PSIR) recommended a two-level enhancement for "knowingly engag[ing] in distribution" of child pornography and noted that grounds may have existed for an upward departure. Crim. Doc. 44 at ¶¶ 25, 95.

At sentencing on September 20, 2018, I applied the two-level enhancement, declined to impose the upward departure and granted a three-level reduction for acceptance of responsibility, resulting in an advisory guideline range of 151 to 188 months. Crim. Doc. 57. I denied Scruggs' motion for downward variance and sentenced him to 151 months' imprisonment and five years of supervised release, along with a $100 special assessment and $21,500 in restitution. Crim. Doc. 57, 58. The Eighth Circuit affirmed on November 22, 2019, holding that it was not plain error to (1) impose a two-level enhancement for knowing distribution or (2) to decline to apply a two-level reduction for conduct "limited to the receipt or solicitation" of child pornography. *United States v. Scruggs,* 799 Fed. App'x 432 (8th Cir. 2019) (per curiam) (unpublished). On May 26, 2020, the United States Supreme Court denied Scruggs' petition for a writ of certiorari. Crim. Doc. 77.

On May 24, 2021, Scruggs mailed his initial § 2255 motion (Doc. 1) to the Clerk of Court. In an initial review order (Doc. 8), I denied part of Claim 2 as being procedurally defaulted and allowed the ineffective assistance of counsel claims to proceed. Scruggs makes four discernible ineffective assistance of counsel claims. Claim 1 alleges his trial counsel, Jill Johnston, was ineffective because she incorrectly advised Scruggs about his eligibility for an additional pretrial detention hearing and the possible application of a then-recent guideline amendment. Doc. 8 at 5.[1] Claim 2 alleges that

---

[1] The portion of Claim 1 concerning Scruggs' alleged eligibility for an additional pretrial detention hearing is **denied**. Scruggs' habeas counsel has not briefed that issue and, in any event, § 2255 provides a vehicle for a federal prisoner to challenge the legality of his or her conviction or sentence. Claims concerning pretrial confinement are not cognizable in a § 2255 motion. *See, e.g., United States v. Robinson*, 40 F.3d 384 (5th Cir. 1994).

2

trial counsel was ineffective for either failing to obtain a copy of an interview recording, or a transcript of the interview, or for otherwise failing to make the recording or a transcript available to Scruggs. *Id.* It also alleges Scruggs' appellate counsel was ineffective for failing to raise an argument regarding his access to the interview. *Id.*

Claim 3 alleges trial counsel was ineffective for failing to investigate evidence regarding his lack of knowledge of the potential distribution of the child pornography he downloaded, including conducting a polygraph examination of Scruggs prior to entering into a plea agreement. *Id.* at 6. Claim 4 alleges trial counsel was ineffective for not objecting to allegedly inaccurate representations of his statements in his PSIR and for not objecting to the two-level enhancement for knowing distribution and the lack of a reduction for conduct limited to receipt or solicitation. *Id.*

### III.    LEGAL STANDARD

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

3

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

To establish a claim for ineffective assistance of counsel, Scruggs must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. "The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143–47 (2012)). Thus, the two-part *Strickland* test applies to ineffective assistance of counsel claims regarding guilty pleas. *Frye*, 566 U.S. at 140.

Since *Strickland* requires proving both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *Williams v. United States*, 452 F.3d 1009, 1012 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial

4

counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

The first *Strickland* standard asks whether an attorney's performance "fell below an objective standard of reasonableness." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The Eighth Circuit determines reasonableness by considering "counsel's performance objectively and gauging whether it was reasonable under prevailing professional norms and considering all the circumstances." *Mayfield v. United States*, 955 F.3d 707, 710 (8th Cir. 2020) (cleaned up). When evaluating the reasonableness of counsel's decisions, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 710-11 (cleaned up).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[t]his standard is less onerous than the preponderance-of-the-evidence standard." *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021). Even so, "the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case." *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022) (quoting *Harrington*, 562 U.S. at 111-12) (internal citation omitted). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

5

# IV.  ANALYSIS

## A.  Counsel's Alleged Failures Concerning the 2016 Guidelines Amendment

### 1.  Legal Background

#### a.  Section 2G2.2 and the Dodd Inference

In *United States v. Dodd*, 598 F.3d 449 (8th Cir. 2010), "an investigator using a file sharing program on the internet accessed and downloaded child pornography stored on Dodd's computer." *Id.* at 451.  Dodd did not object to his "PSR's generic description of file sharing programs, or its description of the manner in which the investigator accessed child pornography on Dodd's computer." *Id.*  However, he did object to a two-level increase that applied if the offense involved distribution. *Id.*  He claimed that he did not intentionally make the child pornography he downloaded through the program available for public viewing and thus did not have the intent to distribute the material. *Id.*  Neither side presented evidence regarding Dodd's intent to distribute or knowledge of distribution at sentencing.  The sentencing court overruled Dodd's objection, concluding that "this increase applies if a file sharing device is set up so that child pornography is available to others with or without further activity by the defendant." *Id.*

On appeal, the Eighth Circuit noted that the determination of whether the two-level enhancement applied "is a fact-intensive inquiry." *Id.*  The court recognized that it is possible that "even a defendant who pleaded guilty to knowing receipt and possession might have no knowledge that his computer was equipped to distribute." *Id.* at 452.  However, the court concluded that because "the purpose of a file sharing program is to share, in other words, to distribute, [a]bsent concrete *evidence* of ignorance—evidence that is needed because ignorance is entirely counterintuitive—a fact-finder may reasonably infer that the defendant knowingly employed a file sharing program for its intended purpose." *Id.*  Further, the court reviewed the text of § 2G2.2 and found that "[t]hese definitions confirm that distribution as defined in § 2G2.2 includes operating a file sharing program that enables other participating users to access and download files

6

placed in a shared folder, and then placing child pornography files in that folder." *Id.* at 452-53.

In *United States v. Durham*, 618 F.3d 921 (8th Cir. 2010), the court confirmed that in *Dodd*, it had "significantly altered the analysis applied to child pornography distribution enhancements in file-sharing cases." *Id.* at 926. The court recognized that fact-finders can reasonably infer knowledge of distribution, absent concrete evidence of ignorance of the file-sharing distribution from the defendant, but ultimately "the government retains the burden to prove the enhancement on a case-by-case basis." *Id.* at 927. The court held that a defendant's level of sophistication with a file-sharing program is indirect evidence of distribution knowledge because such sophistication "provides an inference that the defendant knew 'by using a file-sharing network, he could download files from others who could also access his files.'" *Id.* at 929 (quoting *United States v. Bastian*, 603 F.3d 460, 466 (8th Cir. 2010)).

The court found two facts to be significant: (1) the defense presented evidence that Durham's brother installed the program on his computer and configured it to the default settings, which allowed for sharing, and (2) there was little evidence that Durham knew how to operate the program. *Id.* at 928. Based on these facts, the court concluded that the district court erred by applying the enhancement "solely because he utilized a file-sharing program, which exists for the purpose of sharing files between users." *Id.* at 931. The court noted that it has "consistently prohibited the automatic application of distribution enhancements based solely on a defendant's use of a file-sharing program;" instead, "the enhancement must be decided on a case-by-case basis depending on the facts at hand." *Id.*

The distinction between *Dodd* and *Durham* is that in *Dodd* neither party presented evidence of the defendant's knowledge. Thus, it was appropriate for the district court to reasonably infer knowledge from Dodd's use of a file-sharing program. *Id.* at 932. By contrast, in *Durham* both parties presented evidence that the court determined arose to

"concrete evidence" of Durham's ignorance of the fact that his use of a peer-to-peer program enabled others to obtain files he downloaded through the program. *Id.*

### b. The 2016 Amendment to § 2G2.2

In 2016, § 2G2.2, subparagraph (b)(3)(F), was amended to add "if the defendant knowingly engaged in distribution." U.S.S.G. App. C., §2G2.2, 132 (2018). The Sentencing Commission explained that the amendment "addresses differences among the circuits involving application of the tiered distribution enhancements in §2G2.2." *Id.* The commentary note explains that "[t]he circuits have reached different conclusions regarding the mental state required for application of the 2-level enhancement for 'generic' distribution . . . . The circuit conflicts . . . have arisen frequently, although not exclusively, in cases involving the use of peer-to-peer file-sharing programs or networks." *Id.* The Sentencing Commission also added a commentary note summarizing the situation:

> The circuits have reached different conclusions regarding whether application of the 2-level distribution enhancement at § 2G2.2(b)(3)(F) requires a mental state (*mens rea*), particularly in cases involving use of a file-sharing program or network. The Fifth, Tenth, and Eleventh Circuits have held that the 2-level distribution enhancement applies if the defendant used a file-sharing program, regardless of whether the defendant did so purposefully, knowingly, or negligently. *See, e.g., United States v. Baker*, 742 F.3d 618, 621 (5th Cir. 2014); *United States v. Ray*, 704 F.3d 1307, 1312 (10th Cir. 2013); *United States v. Creel*, 783 F.3d 1357, 1360 (11th Cir. 2015). The Second, Fourth, and Seventh Circuits have held that the 2-level distribution enhancement requires a showing that the defendant knew of the file-sharing properties of the program. *See, e.g., United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2015) (requiring knowledge); *United States v. Robinson*, 714 F.3d 466, 468 (7th Cir. 2013) (knowledge); *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) (knowledge or reckless disregard). The Eighth Circuit has held that knowledge is required, but knowledge may be inferred from the fact that a file-sharing program was used, absent "concrete evidence" of ignorance. *See United States v. Dodd*, 598 F.3d 449, 452 (8th Cir. 2010). The Sixth Circuit has held that there is a "presumption" that "users of file-sharing software

8

understand others can access their files." *United States v. Conner*, 521 Fed. App'x 493, 499 (6th Cir. 2013); *see also United States v. Abbring*, 788 F.3d 565, 567 (6th Cir. 2015) ("the whole point of a file-sharing program is to share, sharing creates a transfer, and transferring equals distribution").

The amendment generally adopts the approach of the Second, Fourth, and Seventh Circuits. It amends § 2G2.2(b)(3)(F) to provide that the 2-level distribution enhancement applies if "the defendant knowingly engaged in distribution." Based on testimony, public comment, and data analysis, the Commission determined that the 2-level distribution enhancement is appropriate only in cases in which the defendant knowingly engaged in distribution. An accompanying application note clarifies that: "For purposes of subsection (b)(3)(F), the defendant 'knowingly engaged in distribution' if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." Similar changes are made to the 2-level distribution enhancement at § 2G2.1(b)(3) and the obscenity guideline, § 2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names), which contains a similarly tiered distribution enhancement.

*Id.* at 136.

### c.    *Eighth Circuit Cases After the Amendment*

The first Eighth Circuit case addressing the 2016 amendment was *United States v. Nordin*, 701 F. App'x 545 (8th Cir. 2017) (per curiam) (unpublished). In *Nordin*, the defendant argued the sentencing court erred in finding that he knowingly distributed child pornography because "he denied sharing child pornography when confronted by law enforcement." *Id.* at 546. However, the court noted these undisputed facts:

(1) Nordin had used at least four file-sharing programs over at least five years; (2) Nordin admitted that he was the primary user of the internet in his household and previously had attempted to "wipe" his hard drive of incriminating materials; (3) Nordin described his computer skills as "intermediate"; and (4) Nordin possessed hundreds of files depicting child pornography, many of which were saved in the shared folder of his file-sharing program, allowing others to access them.

9

*Id.*  Nordin argued "that the district court gave short shrift to the amendment and erroneously applied standards from our pre-amendment decisions."  *Id.* at 546-47.  The court acknowledged the *Dodd* inference, stating "[t]hose cases, some cited above, allow a fact-finder to 'infer that the defendant knowingly employed a file sharing program for its intended purpose,' absent 'concrete evidence of ignorance.'"  *Id.* at 547 (quoting *Dodd*, 598 F.3d at 452).  It also cited the Government's argument "that because those cases provide an evidentiary standard for proving knowledge, rather than an altogether different scienter requirement, the standard survives the 2016 amendment."  *Id.*  The court found no need to address the potential conflict between the *Dodd* inference and the 2016 amendment, as "[n]othing suggests that the district court inferred knowledge based on the fact of the program's use alone."  *Id.*  Instead, it pointed to the undisputed facts and referenced Nordin's "intermediate" computer skills and his use of a computer to transfer the incriminating files.  *Id.*

In *United States v. Smith*, 910 F.3d 1047 (8th Cir. 2018),[2] a law enforcement agent downloaded five child pornography files from the shared folder of a peer-to-peer program (ARES) on Smith's computer.  *Id.* at 1056.  Those images were not found on Smith's computer when it was forensically examined months later, which was the main basis for his objection to the district court's finding that he knowingly engaged in distribution.  *Id.*  However, Smith admitted that (1) he was a sophisticated user of ARES and other file-sharing programs; (2) he knew the ARES program automatically shared child pornography images saved to the shared folder; and (3) he used programs designed to shred incriminating files.  *Id.*  Further, despite his use of the shredding programs, "the forensic evidence showed a substantial number of child pornography images in the shared folder."  *Id.*  The court concluded that "the evidence established that Smith engaged in

---

[2] I sentenced Scruggs on September 20, 2018, after the unpublished *Nordin* decision was issued.  *Smith* was decided December 11, 2018, and the remaining cases discussed in this section were likewise decided after Scruggs was sentenced.

knowing distribution as defined in the amended guideline and applied in *United States v. Nordin*, 701 F. App'x 545, 546-47 (8th Cir. 2017)." *Id.* The court declined to reject *Nordin* as contrary to the amended guideline. *Id.*

The next relevant Eighth Circuit decision involved Scruggs' own, direct appeal. *United States v. Scruggs*, 799 F. App'x 432 (8th Cir. 2019) (per curiam) (unpublished). While his appellate counsel filed an *Anders*[3] brief, Scruggs filed a pro se supplement regarding application of the 2016 amendment. The court then requested supplemental briefs "addressing application of the knowing-distribution enhancement under U.S.S.G. § 2G2.2(b)(3)(E), as modified in 2016 by Amendment 801, and relatedly whether the failure to consider an offense-level reduction under U.S.S.G. § 2G2.2(b)(1) constituted plain error." *Id.* at 432. Applying plain error review, the court held as follows:

> [W]e conclude that it was not plain error for the district court to impose the two-level enhancement under section 2G2.2(b)(3)(F) for Scruggs 'knowingly engag[ing] in distribution" of child pornography given that Scruggs left dozens of child pornography "depictions" in a shared folder of his file-sharing software that were available on three different days over a seventeen-day span, acknowledged that he understood how his file-sharing software worked, and demonstrated that he generally had a measure of proficiency in using computers and the internet. *See United States v. Smith*, 910 F.3d 1047, 1056 (8th Cir. 2018) (upholding application of enhancement to sophisticated computer user who knew file-sharing program automatically shared images saved to shared folder, and who had substantial number of child pornography files in shared folder despite use of program designed to shred files).

*Id.* The Court also found that it was "not plain error for the district court to decline to apply a two-level reduction under section 2G2.2(b)(1) because, regardless of Scruggs's intent, it is undisputed that his conduct was not 'limited to the receipt or solicitation' of child pornography where an investigator was able to download child pornography from Scruggs's computer via file-sharing software." *Id.* at 432-33.

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

In *United States v. Martinez*, 970 F.3d 986 (8th Cir. 2020), the court affirmed the district court's finding of knowledge and found it unnecessary "to decide whether the *Dodd* formulation is consistent with the amended guideline." *Id.* at 988-89. The relevant facts included: (1) for almost a year, "investigators downloaded approximately 1,000 files containing child pornography from internet protocol addresses that were associated with Martinez;" (2) several files containing child pornography were found on a thumb drive seized pursuant to a search warrant; (3) through forensic analysis, investigators found a peer-to-peer program called BitTorrent on the laptop and cellphone also seized, but found no child pornography on those devices; (4) Martinez admitted he used BitTorrent on his laptop and cellphone to download child pornography; and (5) Martinez stated that he deleted the images from the shared BitTorrent folder after several minutes or hours "because he knew that the file-sharing system was capable of sharing the images, and he wanted to prevent others from accessing the files." *Id.* at 987. Thus, Martinez argued that he did not knowingly distribute the images because he attempted to delete them out of the shared BitTorrent folder. *Id.* at 987-88. The district court disagreed and applied the enhancement "because Martinez 'knew the characteristics of the BitTorrent program' and was 'fully aware of its capabilities.'" *Id.* at 988.

The Eighth Circuit noted that Martinez's attempt to delete files from the shared folder did not defeat a finding of knowledge because (1) "his admissions show that he knew the files were amenable to sharing before he deleted them" and (2) investigators downloaded hundreds of files from that shared folder. *Id.* at 988. The court also addressed Martinez's argument that the district court's reference to the *Dodd* inference was error. *Id.* The court explained that *Dodd* was decided "under a former version of the guideline" and noted that the 2016 amendment added "an express scienter requirement of knowledge." *Id.* However, as in *Nordin*, the court found it unnecessary to decide if the *Dodd* inference survives the 2016 amendment. *Id.* at 988-89. Thus, Eighth Circuit has not yet resolved that question.

## 2. Discussion

### a. Deficient Performance

Scruggs contends his trial counsel's advice regarding *Dodd*'s knowledge inference following the 2016 amendment to the distribution sentencing guideline enhancement constituted deficient performance. In Claim 1, he alleges that her advice was incorrect. In Claim 3, he alleges that she failed to investigate evidence regarding Scruggs' lack of knowledge of the potential distribution of the child pornography he downloaded, including declining to conduct a polygraph examination. Part of Claim 4 alleges that counsel failed to object to a two-level enhancement for knowing distribution and the lack of a guidelines reduction[4] for conduct limited to receipt or solicitation.

Assistant Federal Public Defender Jill Johnston represented Scruggs. She states that before Scruggs pleaded guilty, she "advised him that he would receive an enhancement pursuant to § 2G2.2(b)(3)(F)." Doc. 13 at 2, ¶ 6. She further explains that she and Scruggs "discussed this on number occasions, and Mr. Scruggs provided me information as to why he did not think that the enhancement should apply. He explained that he thought he had MicroTorrent set to not share and that most of the child pornography came from news groups, not MicroTorrent." *Id.* She states that she provided Scruggs "with cases explaining the law on the distribution enhancement." *Id.* at 3. Her case notes indicate that she "gave him a copy of the Durham case."[5] Doc. 13-1 at 1.

---

[4] Scruggs acknowledges Eighth Circuit authority directing that this reduction "does not apply to a defendant who distributed child pornography, whether he did so knowingly or not." Doc. 23 at 11 (quoting *Haney v. United States*, 962 F.3d 370, 374 (8th Cir. 2020)). However, he claims that he did not distribute child pornography. *Id.*

[5] Scruggs states Johnston also provided him copies of *Dodd* and *United States v. Estey*, 595 F.3d 836 (8th Cir. 2010). Doc. 23 at 2-3. Like *Durham*, these cases were decided prior to the 2016 amendment.

13

Johnston states that she "explained that the government had to prove up any sentencing enhancements, but I also explained that under case law, a defendant needed to present 'concrete evidence of ignorance' to counter an inference that a peer-to-peer file sharing program was utilized to distribute files." Doc. 13 at 3 (quoting *Durham*, 618 F.3d at 931). Johnston states that she and Scruggs did discuss the possibility of objecting to the enhancement, but she "advised him that if we presented evidence contesting the enhancement, specifically his own testimony, he could risk losing acceptance of responsibility if the court did not find his testimony credible." *Id.* Because Scruggs "worked in the tech industry," she "felt this cut against the likelihood of the court not applying the enhancement." *Id.* Further, "Scruggs admitted to downloading MicroTorrent and denied making any 'configurations' to it." *Id.*

As for Scruggs' request for a polygraph to help prove that he did not have the requisite intent to distribute child pornography, counsel explains that she discussed that option with Investigator Tina Debban. *Id.* Debban advised Johnston that it is not possible to test on intent and Johnston passed this information on to Scruggs. Doc. 13-1 at 3. Regarding the forensic evidence, Johnston states she had staff look at the Government's forensic report and "hired Dan Meinke to review the report and render his own opinions. Mr. Meinke is the Senior Partner at Computer Forensic Resources, Inc., out of Sioux Falls, South Dakota." Doc. 13 at 2, ¶ 6. She states that this report "did not help with challenging the distribution enhancement." *Id.* at 3. Instead, his "examination confirmed that the sharing capability of MicroTorrent had to be on in order for law enforcement to download images from Mr. Scruggs' computer, [and] that MicroTorrent was installed in November 2013," which is when law enforcement obtained images from Scruggs' computer. *Id.* at 3-4. Meinke did explain that if Scruggs had turned off sharing in MicroTorrent, an "update to the program could have returned it to its default settings, such that the program was sharing despite Mr. Scruggs having previously disabled sharing. However, the problem was that MicroTorrent was installed in November 2013, around the time that law enforcement obtained the images." *Id.* Johnston states that she

14

shared this information with Scruggs prior to the deadline to file objections to his draft PSIR. *Id.*

Johnston explains that "after much discussion and based on my advice, Mr. Scruggs chose to not challenge the distribution enhancement. This is why no objection was made to paragraph 25 of the presentence report." *Id.* She cites to a case note created on July 19, 2018, in which she logged a voice mail message from Scruggs. *Id.*; Doc. 13-1 at 2. This note states: "He's still kind of on the fence about challenging the distribution enhancement, but he will go with my advice to not object to it. But he does want to use the argument in support of a downward departure." Doc. 13-1 at 2.

Scruggs' declaration (Doc. 2-1) generally tracks with Johnston's affidavit. He states that Johnston reviewed the sentencing guidelines with him, including the enhancements she thought would apply. Doc. 2-1 at 77, ¶ 7. He alleges she did not review caselaw at this meeting but told him that the distribution enhancement would apply and stated that "[a]ll these cases are pretty much the same." *Id.* at 77-78, ¶ 7. Scruggs explains that counsel "did not mention that knowing distribution was an element," but he reviewed a guidelines summary and told Johnston he "did not believe the distribution enhancement would apply." *Id.* at 78, ¶ 7. He alleges that he told Johnston that he "was surprised to learn anyone was able to download files from me. I did not know that my files were available," to which she responded, "the same enhancements apply in virtually every case." *Id.*

Following his guilty plea, Scruggs alleges that he renewed his disagreement with the distribution enhancement. *Id.* at 78, ¶ 11. He claims Johnston responded that "it did not matter that I did not intend to distribute. I insisted that I did not know that distribution would occur or actually did occur – this is why I told the police that I did not share images – it happened by mistake." *Id.* He further alleges Johnston "advised that the only defense was ignorance of a file sharing program's operation and that it required a showing of near total computer illiteracy. She said she did not think that I was computer illiterate." *Id.* at 78, ¶ 12.

Scruggs and Johnston went back and forth about the application of the distribution enhancement. He states that she provided him *Estey*, *Durham* and *Dodd* to review. *Id.* at 78, ¶ 13. She told him that *Durham* "was the only successful defense of the distribution enhancement and that it required that he have no computer sophistication. *Id.* *Dodd* "showed that the defendant bore the burden of proof," and Johnston allegedly stated again that she would not argue Scruggs was computer illiterate. *Id.* Scruggs responded that he was confused by the *Durham* burden of proof discussion and it made no sense to him. *Id.* He alleges Johnston "never told me that after *Durham* and *Dodd* there had been a change to the very sentencing guideline that we were discussing and that the change drew into question the *Dodd* inference of knowledge." *Id.*

After reviewing caselaw with Johnston, Scruggs alleges he believed the enhancement still did not apply but Johnston did not want to object to it. *Id.* at 78, ¶ 14. He claims Johnston again told him "that near computer illiteracy was the only defense and that the defendant must prove it." *Id.* Scruggs responded that he "felt boxed in and that I could not agree to the enhancement because I had been surprised by the result, therefore how could I have had knowledge it was occurring." *Id.* He asserts Johnston told him, "if I insisted on objecting, and the court did not find in my favor, then I could lose acceptance of responsibility because I had objected to something that the court determined to be true." *Id.* at 78-79, ¶ 14. Scruggs alleges Johnston failed to inform him "that the court could only deny acceptance of responsibility if the court found that the defendant's objection was frivolous, or that the defendant said something patently false." *Id.* at 79, ¶ 79. Instead, Johnston suggested using his "lack of knowledge" argument to support a downward variance. *Id.* Scruggs asserts that at their last meeting before his sentencing, Johnston "could not articulate how she would make an argument in objecting to the enhancement." *Id.* at 79, ¶ 15.

Regarding his factual objections, Scruggs states: "Prior to 2013, I used MicroTorrent software to download only non-pornographic files. I did this sporadically and rarely." *Id.* at 79, ¶ 19. He states that he attempted to download pornography on

16

MicroTorrent "after reading only that it was possible to use MicroTorrent without sharing downloads." *Id.* at 79, ¶ 20. He explains that he knew he had to download a file from a website to get a torrent, and "[a]fter downloading the file I would double click the file, which would start the download. After the file was downloaded I would delete the tracking file and any reference to the torrent that I could find within the program." *Id.* He claims that he "believed that removing the tracking file would prevent any possibility of the files being available for others. This is what I thought a tracking file meant. This is what I meant when I told law enforcement that I deleted it out of the program." *Id.* at 79, ¶ 21. Thus, he claims that he "had no knowledge of a shared folder. I never saw any indication of one on my system. I was not asked by the software to designate a shared folder. I did not need one to access my files. The program did not require that I set one up by name." *Id.* at 79, ¶ 22. He explains that the 44 images law enforcement downloaded "were in a single torrent file" and "[t]he torrent tracking file corresponding to the 44 files had a .exe file extension."[6] *Id.* at 79, ¶¶ 23-24.

Scruggs argues that Johnston was deficient for incorrectly advising him about the burden of proof at sentencing, the knowing distribution element of the enhancement guideline "and the consequences to the plaintiff if the court did not rule in his favor." Doc. 2-1 at 66. He states that, "[h]ad counsel not provided the incorrect statements[,] the plaintiff would have insisted on objections to the enhancements 2G2.2(b)(3)(F) and 2G2.2(b)(1)." *Id.* The Government asserts that Johnston's advice was not deficient because, "[a]s the Eighth Circuit's pre-amendment opinions demonstrate, a knowledge standard was required in this circuit even before [the 2016 amendment]." Doc. 15 at 23. It also acknowledges that "the Eighth Circuit's post-2016 cases have upheld the two-level

---

[6] A file with an .exe extension is generally associated with running a program. "For example, Firefox web browser installer might be called *Firefox Setup.exe*, but once installed, the program opens with the *firefox.exe* file located in the program's installation directory." Tim Fisher, *What Is an EXE File?*, LIFEWIRE (June 8, 2023), https://www.lifewire.com/exe-file-2622732. Additionally, this file format is "only ever used to launch an application." *Id.*

enhancement based on the facts of those cases without deciding whether knowledge may be inferred from the fact that a file-sharing program was used." *Id.*

"Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), meaning conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Reasonableness is determined by considering "counsel's performance objectively and gauging whether it was reasonable under prevailing professional norms and considering all the circumstances." *Mayfield v. United States*, 955 F.3d 707, 710 (8th Cir. 2020) (cleaned up). When evaluating reasonableness, "there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 710-11 (cleaned up).

The guideline amendment at issue, and its related commentary that cast doubt on the Eighth Circuit's approach to knowledge of distribution, took effect in 2016. *Nordin* was decided about one year later, on November 17, 2017. While unpublished, it signaled that the amendment's effect on the *Dodd* inference was an open question. I sentenced Scruggs on September 20, 2018. Crim. Doc. 57. According to her affidavit, Johnston believes she "explained that the government had to prove up any sentencing enhancements, but I also explained that under case law, a defendant needed to present 'concrete evidence of ignorance' to counter an inference that a peer-to-peer file sharing program was utilized to distribute files." Doc. 13 at 3 (quoting *Durham*, 618 F.3d at 931). This tracks with Scruggs' assertion that counsel told him the only way to avoid the distribution enhancement was essentially to show that he was computer illiterate.

Johnston's affidavit does not address the 2016 guideline amendment, or even indicate that she was aware of it, before Scruggs was sentenced. Thus, there is no suggestion that she discussed the amendment with Scruggs and considered the impact it might have had on pre-amendment caselaw. Her case notes confirm that Scruggs

18

disagreed with the enhancement's application and wanted to object, but agreed not to do so in light of Johnston's advice. While there was evidence supporting Scruggs' computer knowledge and his use of a peer-to-peer program to download child pornography, Johnston's apparent failure to take into account the guideline amendment, and its potential impact on Scruggs' ability to challenge the distribution enhancement, is concerning. I find that she did not adequately investigate the then-current state of the law regarding the knowledge requirement.

As a result of this failure, Johnston did not adequately investigate the facts regarding Scruggs' intent. Generally, "[t]rial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary." *Kemp v. Kelley*, 924 F.3d 489, 500 (8th Cir. 2019). The question is whether "trial counsel was unreasonable in not exploring an alleged defense." *United States v. Vazquez-Garcia*, 211 F. App'x 544, 545 (8th Cir. 2007). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). However, "'strategic choices made after less than complete investigation are reasonable' only to the extent that 'reasonable professional judgments support the limitations on investigation.'" *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984)).

Here, Johnston focused her investigation on the issue of whether Scruggs' computer actually facilitated the distribution of child pornography. There is no evidence that she sought to determine what type of work Scruggs did as a technology company project manager, his sophistication with MicroTorrent or other peer-to-peer programs, whether he knew what files were shared, his explanation for why those 44 files were downloadable by law enforcement or any other evidence that would reflect on Scruggs' knowledge and intent to distribute. Thus, because Johnston apparently did not take the

19

2016 amendment into account, she failed to conduct a factual investigation to determine if that amendment gave rise to arguments that the distribution enhancement did not apply.

Scruggs asserts that he would have insisted on objecting to the enhancement if his counsel had properly advised him of the law. Because the viability of the *Dodd* inference became a legitimate question following the 2016 amendment, counsel's failure to properly advise Scruggs about the distribution enhancement, and failure to investigate facts that may have supported an objection to the enhancement, constituted deficient performance.

As for Scruggs' contention that Johnston should have also sought a two-level reduction pursuant to Guideline § 2G2.2(b)(1), she was not deficient. Scruggs acknowledges that this reduction only applies if a defendant does not distribute child pornography at all, regardless of the defendant's knowledge of the distribution. Doc. 23 at 11; *Haney v. United States*, 962 F.3d 370, 374 (8th Cir. 2020). Because law enforcement did, in fact, access child pornography from Scruggs' computer, Scruggs had no colorable argument for this reduction. This portion of Claim 4 is **denied**.

However, because counsel was ineffective in providing erroneous legal advice, failing to investigate Scruggs' knowledge of distribution based on that erroneous advice, and thus failing to object to the distribution enhancement, I will address the question of whether Scruggs was prejudiced by those deficiencies.

### b.    *Prejudice*

As noted above, to establish prejudice a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[t]his standard is less onerous than the preponderance-of-the-evidence standard." *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021). Even so,

20

"the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case." *Dorsey v. Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022) (quoting *Harrington*, 562 U.S. at 111-12) (internal citation omitted).  Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006).

Ultimately, a showing of prejudice requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).  Because Scruggs' guideline range would have been 121 to 151 months instead of 151 to 188 months, Scruggs can show prejudice if there is a reasonable probability that but for counsel's deficient performance, I would have found the distribution enhancement did not apply and would have sentenced him to less than 151 months' incarceration. *See Glover v. United States*, 531 U.S. 198, 202-205 (2001) (holding that a two-level guideline range increase resulting in an increase of 6 to 21 months in a defendant's sentence constituted prejudice).

Scruggs argues that his counsel's erroneous advice, and its impact on her representation, "resulted in a lost opportunity to meritoriously challenge the distribution enhancement, successfully achieve a reduced guideline calculation, and persuade the sentencing court that Scruggs's advisory guideline range was not 151 to 188 months, but rather 121 to 151 months." Doc. 23 at 11.  Further, Scruggs points out that I imposed a sentence at the bottom of the guideline range after considering the relevant sentencing factors.  Doc. 29 at 4.

The Government argues that the distribution enhancement applied regardless of counsel's advice to Scruggs.  Doc. 15 at 27.  It states:

> [t]he facts demonstrated that movant was experienced with peer-to-peer file sharing software and knew his file sharing program could share child pornography; that movant claimed he had deleted the child pornography files from the program when he had not done so; that law enforcement had

downloaded 44 depictions of child pornography from his computer on three
separate dates in a 17-day time period; that movant was an intelligent,
educated person with extensive technological experience at work and at
home; and that he used an extremely secure password and advanced
computer software; including encryption software and file shredding
software; and that movant had years of experience downloading thousands
of depictions of child pornography.

*Id.* Further, the Government argues that if his counsel had put Scruggs "on the stand to rebut the substantial evidence of his knowledge, his testimony would not have been credible, and he would have risked losing his three-level reduction for acceptance of responsibility." *Id.* at 30.

In considering prejudice, I will first review the evidence available to me at sentencing and then address the facts Scruggs now relies on to argue that he did not knowingly engage in distribution. At sentencing, I noted that the PSIR found a total offense level of 34 and a criminal history category of I, resulting in a guideline range of 151 to 188 months. Crim. Doc. 67 at 6. I adopted the PSIR in light of the fact that there were no objections to those guideline findings. *Id.* In her argument for a downward variance, Johnston argued: "There's also evidence in this case that Mr. Scruggs tried not to share any of the files that he had downloaded, and he did that by deleting them and also by not solely using peer-to-peer technology when seeking out the child pornography." *Id.* at 19, ¶¶ 2-5. She also made this argument in her sentencing memorandum:

Another important consideration is that despite using torrents to obtain some
child pornography, Mr. Scruggs did not think that his files were in a shared
folder and he took steps to try to prevent the depictions from being available
to others. PSR ¶ 14; Defendant's Exhibit G, p. 4. Once he would
download a depiction via use of torrents, he would delete the file from the
torrent program in an attempt to prevent it from being shared with others.
PSR ¶ 14. Mr. Scruggs also did not obtain child pornography solely by
using a peer-to-peer type program as the PSR reflects. He also used
newsgroups, which are best described as internet discussion groups.
Defendant's Exhibit G, pp. 3-4. His use of these newsgroups, rather than

22

only peer-to-peer technology, shows a concern for not wanting to further distribute the images he obtained.

Crim. Doc. 50-1 at 10.

In the sentencing memorandum, Johnston cited to Defense Exhibit G, the officer's summary of Scruggs' interview. Crim. Doc. 50-4 at 15-20. Regarding his computer sophistication, the summary states that Scruggs told the officer he had "average" computer skills, in 1998 he took some undergrad courses in networking and programming and he used encryption and wiping software. *Id.* at 16. Also, he worked for Advanced Technology Associates, "a small aerospace company," and then IBM in project management. *Id.* at 15. He owned a variety of computer hardware, including a home computer, external hard drives, a thumb drive, a wireless router and a broken computer tower. *Id.* at 16-17. He mainly used "news groups" to download the majority of his images for over 10 years. *Id.* at 17-18.

Regarding peer-to-peer software, Scruggs initially "denied any use of peer to peer networks because he was unsure of how they worked. Later in our conversation, he spoke about trying torrents and downloading the program uTorrent (aka MicroTorrent)." Crim. Doc. 50-4 at 17. He mentioned visiting Pirate Bay to use their torrents. *Id.* at 18. He explained to the officer that he believed peer-to-peer software worked by storing torrents on multiple computers "and the technology finds the computers to complete the file." *Id.* The officer noted that Scruggs "did not think there was a shared folder. He advised that once he would download, he would delete the files so that it would not be uploaded to others." *Id.* Additionally, Scruggs denied changing the MicroTorrent program's settings or configurations once he downloaded it. *Id.* He explained to the officer that he learned about the program from reading about it online and in the news. *Id.* However, Scruggs "denied that he ever shared images with anyone." *Id.*

Scruggs' PSIR (Crim. Doc. 44) included other information relevant to the application of the distribution enhancement. The PSIR listed several electronic devices Scruggs possessed that contained child pornography, including at least two external hard

23

drives and two hard drives in computers. *Id.* at 4, ¶ 10. On three separate days in November 2013, an investigator using BitTorrent was able to download 44 depictions of child pornography from Scruggs' computer. *Id.* at 5, ¶ 11. The PSIR stated that Scruggs "used a variant of BitTorrent, uTorrent (also known as MicroTorrent), to download child pornography, and this program made child pornography files on the defendant's computer available for others to download." *Id.* In December 2013, an investigator working on a BitTorrent peer-to-peer investigation advised other officers that "she had been notified of numerous downloads from a computer with an IP address that was registered to the defendant." *Id.* at 5, ¶ 12.

The PSIR further stated that during his interview, Scruggs "admitted to using MicroTorrent to download child pornography." *Id.* at 6, ¶ 14. It described his attempt to explain how torrents worked and his explanation that "he did not believe his files were in a shared folder" because he deleted the files out of the program. *Id.* Finally, the PSIR noted that "the forensic examiner found the 44 files that the peer-to-peer investigator had downloaded in November 2013," along with encryption software, shredding software and the MicroTorrent software. *Id.* at 6, ¶ 17.

In support of his current motion, Scruggs has submitted an unofficial transcript of his recorded interview with law enforcement. Doc. 23-1. Scruggs relies on this interview as evidence of his lack of knowledge. Doc. 23 at 5-12. According to this the transcript, when Scruggs was asked to rate his experience with computers, he stated: "I don't know my average, to be honest with you. I know I work for IBM, I'm not a technical person. I know a little bit. I know more than probably most people, but I am no expert." Doc. 23-1 at 19. He also stated that he had a little bit of education back in 1998 with computers. *Id.* Specifically, "I went back to school and took some undergrad courses, and computer networking, and programming. My undergrad is in physics, a little bit there." *Id.*

Scruggs stated that in 2009, he worked on preparing a website but did not obtain a domain name. *Id.* at 30. As for peer-to-peer programs, Scruggs stated that he did not

believe he used peer-to-peer services, and he phrased it that way because he was "not real familiar with peer-to-peer technology." *Id.* at 30-31. He admitted to using "newsgroups" to find child pornography. *Id.* at 34-37. When asked if he used any other means to obtain such images, he stated that he had "tried torrents." *Id.* at 37. He explained that he searched for images on "Google and I've gone to a couple of torrent sites specifically, and used their searches on the torrents." *Id.* at 52. He listed "Pirate Bay" as a torrent site he had used. *Id.*

Regarding his intent to distribute, the officer asked whether he ever wanted to show the images to anyone else. *Id.* at 41. Scruggs responded: "No, I did not. I do not. I have never. I don't share these images. I don't chat with people online about them. Let me say any of the illegal images, I've never shared images that I think could have been illegal." *Id.* He was also asked about his understanding of how torrents worked. *Id.* at 56. Scruggs stated that he did not "have much of an understanding of how it works," but he did "believe that torrents are more of a peer to peer technology." *Id.* He explained that he:

> [knows] enough about computers to know as opposed to news groups where typically they're just files, they're residing on a server out there, I believe torrents are. They may reside on multiple computers and the technology will go out there and find the computer that it's on. And it may not be the entire file, it may just pull a piece across.

*Id.*

The officer asked if Scruggs had his own shared folder from which files could be shared through torrents, to which he responded, "[t]hat I don't know. I don't believe so. And then in fact, typically if I have gone out to get a torrent, once I get it, as soon as I get it, I delete it. I delete it out of the program." *Id.* at 57. This is because he believed that "once you download it, it then goes back out and uploads it to others." *Id.* The officer discussed peer-to-peer programs with Scruggs, noting that "as a part of the program you are sharing as well," and asked Scruggs if he had "any knowledge of that or have you made any configurations?" *Id.* Scruggs stated that "I have not. And in the

25

torrent program, I have made no configurations. I simply downloaded it." *Id.* He explained that he learned about torrents and micro-torrents "generally in the news, and I think I might have gone out to Google and looked up torrents." *Id.* at 58.

As noted above, on Scruggs' direct appeal the Eighth Circuit found that imposing the enhancement based on the sentencing record was not plain error because:

> Scruggs left dozens of child pornography 'depictions' in a shared folder of his file-sharing software that were available on three different days over a seventeen-day span, acknowledged that he understood how his file-sharing software worked, and demonstrated that he generally had a measure of proficiency in using computers and the internet.

*Scruggs*, 799 Fed. App'x at 432. I must now consider whether there is a substantial likelihood that I would have sustained an objection to the distribution enhancement, and imposed a lower sentence, if Scruggs had been properly advised and given the opportunity to investigate and present evidence pertaining to his knowledge of distribution. The answer is no.

It is undisputed that on three separate dates in November 2013, an investigator using BitTorrent software was able to access and download 44 depictions of child pornography from Scruggs' computer. Crim. Doc. 44 at ¶ 11. The PSIR includes Scruggs' admission that he knew how peer-to-peer file sharing software worked and that he had experience using such software. *Id.* at ¶ 14.[7] He knew that torrents are a "peer to peer technology" and admitted that he used MicroTorrent to download child pornography. *Id.* He described his understanding that torrents "may reside on multiple computers, and technology will go out there and find the computer that it's on and it may not be the entire file; it may just pull a piece across." *Id.*

It is also undisputed that Scruggs is highly educated and has significant experience using computer technology. He has an MBA and had been a project manager at numerous

---

[7] Scruggs' argument that Johnston should have objected to paragraph 14 will be discussed later in this ruling.

businesses, including Advanced Technology Associates and IBM. Crim. Doc. 44 at ¶ 61. Scruggs used computers all day at work and usually one to two hours per day at home. Crim. Doc. 50-4 at 16. He had taken undergraduate courses in networking and programming and had registered his own website in 2009. *Id*; *see also* Crim. Doc. 44 at ¶ 15; Doc. 23-1 at 30. The forensic examiner found TrueCrypt software and File Shredder 2.0, a secure deletion tool that allows a user to wipe a file from a hard drive. Crim. Doc. 44 at ¶ 17. Thus, despite his self-serving minimization of his computer skills and knowledge, the evidence indicates that Scruggs had a relatively-sophisticated understanding of peer-to-peer software and other relevant technologies.

Regardless of whether the Eighth Circuit's "concrete evidence of ignorance" standard survived the 2016 amendment, the two-level distribution enhancement applies when a defendant "knowingly engaged in distribution." *See* USSG § 2G2.2(b)(3)(F). Even if Scruggs had been properly advised, and his trial counsel had investigated further and obtained the additional information that is now part of § 2255 record, Scruggs has failed to demonstrate a substantial likelihood that an objection to the distribution enhancement would have been sustained at sentencing. Instead, the evidence available at sentencing, when combined with the additional evidence Scruggs has submitted, demonstrates by a preponderance of the evidence that Scruggs was properly assessed with a two-level increase for distribution under § 2G2.2(b)(3)(F). Because he has failed to show that he suffered prejudice as a result of his trial counsel's deficient performance, all of Scruggs' claims related to the distribution enhancement must be **denied**.

## B. *Other Ineffective Assistance of Counsel Claims*

### 1. *Access to Scruggs' Law Enforcement Interview (Part of Claim 2)*

In Claim 2, Scruggs argues that Johnston was ineffective for failing to provide him with access to his law enforcement interview. Doc. 8 at 5. Claim 2 also alleges that Scruggs' appellate counsel was ineffective for failing to raise an argument on direct appeal regarding access to the interview. *Id.* The majority of his argument is focused

on his counsel's failure to investigate his knowledge of distribution, which I have already addressed. Doc. 23 at 6-10. Therefore, I will review only the issue of whether Scruggs' lack of access to his interview, alone, constituted ineffective assistance of counsel.

Scruggs claims Johnston told him, "she could not bring a copy of plaintiff's recorded statements" into the jail at which he was being detained. Doc. 2-1 at 68. Scruggs argues that Johnston provided ineffective assistance of counsel regarding this lack of access because his interview statements "were used at sentencing as the sole basis for an enhancement under 2G2.2(b)(3)(F)." *Id.* He claims that paragraph 14 of his PSIR was the only basis the Government had for imposing the enhancement, and trial counsel erred in not allowing him to review the interview this paragraph was based on because "[t]here are two clear inconsistencies between the statements in the PSR and in the law enforcement minutes." *Id.* at 69. Scruggs cites his PSIR:

> He stated he did not believe his files were in a shared folder. He stated, "Typically, if I have gone out to get a torrent, once I get it, as soon as I get it, I delete it, I delete the, I delete it out of the program. Because I do believe that it goes, once you download it, it then goes back out and it uploads to others."

*Id.* The law enforcement minutes state that Scruggs "did not think there was a shared folder. He advised that once he would download, he would delete the file so that it would not upload to others." *Id.* Scruggs alleges, "there is a critical difference between the statements" because in the PSIR statement, he is aware of a shared folder but in the law enforcement minutes, he does not think there is a shared folder at all. *Id.* Scruggs acknowledges that his trial counsel showed him the law enforcement minutes from his interview. *Id.* at 69-70. Johnston filed these minutes as a sentencing exhibit. Crim. Doc. 50-4 at 15-20.

In her affidavit, Johnston states she watched Scruggs' interview and took notes of what he said. Doc. 13 at 4. After doing so, she met with Scruggs and shared those notes with him. Doc. 13 at 4. She cannot remember why she did not have Scruggs watch the interview himself. *Id.* Johnston concedes that Scruggs said in his interview, "he did not

28

think there was a shared folder" rather than "he did not believe his files were in a shared folder," as stated in the PSIR. *Id.* However, she points out that either way, he admitted to deleting files that he downloaded through MicroTorrent, which implies he was aware of the program's capability to share, if not the exact mechanism. *Id.* Counsel explains that she went through Scruggs' PSIR with him, paragraph by paragraph, as she does with all of her clients. *Id.* at 5. She tells clients to let her know if anything is incorrect or if there is anything they do not understand. *Id.* She states that her notes do not indicate that Scruggs wanted to lodge an objection to paragraph 14 which, as set forth above, summarized many of Scruggs' statements to law enforcement. *Id.*

The Government points out that the evidence regarding Scruggs' knowledge of distribution "was not dependent on how movant phrased his denial of this knowledge." Doc. 15 at 34. It also argues that Johnston was not deficient in failing to show Scruggs the interview video because she "reviewed the video, reports, and PSR, listened to movant's concerns, and advised movant that he should not contest the two-level distribution enhancement." *Id.* As for Scruggs' appellate counsel, the Government notes that "the issue of whether district court counsel showed movant the video had nothing to do with any appeal issues in this case." *Id.* The Government also contends that Scruggs was not prejudiced by his inability to review the interview video because "the distribution enhancement was not based solely on movant's statements." *Id.* at 34-35. Scruggs responds by arguing that because his knowledge of distribution was a critical issue at sentencing, and he was not able to review his interview, he "was handicapped by the fact that more than four years had passed from the time of his interview until his arrest and prosecution." Doc. 23 at 6.

Johnston's decision to discuss her notes and the law enforcement minutes with Scruggs, rather than attempting to arrange for Scruggs to review the interview himself, did not fall below an objective standard of reasonableness. Nor has Scruggs demonstrated that he suffered prejudice based on this tactical decision. As for his appellate counsel claim, the Government is correct that the only substantial issue on appeal was whether it

29

was plain error to impose the distribution enhancement at sentencing in light of the sentencing record. *Scruggs*. 701 F. App'x at 432. Appellate counsel had no reason to raise an issue on direct appeal as to whether Johnston performed deficiently by not arranging for Scruggs to review his law enforcement interview. Nor can Scruggs demonstrate prejudice resulting from appellate counsel's decision not to raise this issue on direct appeal.

Because Scruggs has failed to demonstrate that he is entitled to relief based on his lack of access to his law enforcement interview, that portion of Claim 2 is **denied**.

### 2. *Failure to Object to Statements in the PSIR (Part of Claim 4)*

Scruggs contends that Johnston was ineffective in failing to object to statements in his PSIR that do not exactly match the language he used in his recorded interview. Doc. 8 at 6. He cites to the sentence in paragraph 14 indicating that he "stated he did not think his files were in a shared folder." Doc. 2-1 at 73. The law enforcement minutes reflect that Scruggs actually stated that "[h]e did not think there was a shared folder." *Id*. The Government points out that this issue is substantially similar to Scruggs' argument in Claim 2 that Johnston was ineffective by failing to provide Scruggs access to his interview. Doc. 15 at 37. As previously noted, her affidavit states that she went through each paragraph of the PSIR with him and he did not tell her to lodge an objection to paragraph 14. Doc. 13 at 5.

The slight discrepancy Scruggs notes between the two descriptions of his interview is a distinction without a difference. Scruggs does not allege that his counsel did not review the PSIR with him or otherwise act deficiently. Nor could this slight difference in verbiage have been determinative at sentencing. Because Scruggs has failed to demonstrate either deficient performance or prejudice, the portion of Claim 4 regarding Johnston's failure to object to this factual statement in the PSIR is **denied**.

## V.    CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that Scruggs failed to make the requisite "substantial showing" with respect to any of the claims raised in his § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Thus, a certificate of appealability will not issue. If he desires further review of his § 2255 motion, Scruggs

may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VI.   CONCLUSION

For the reasons discussed herein, all remaining claims asserted in Christopher Scruggs' motion (Doc. 1) and amended motion (Doc. 2-1) pursuant to 28 U.S.C. § 2255 are **denied** and this case is **dismissed with prejudice**.  A certificate of appealability **will not issue**.

**IT IS SO ORDERED.**

**DATED** this 22nd day of September, 2023.

_____
Leonard T. Strand, Chief Judge